# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE NATIONAL ASSOCIATION FOR FIXED ANNUITIES, <br><br> *Plaintiff*, <br><br> v. <br><br> THOMAS E. PEREZ, Secretary of the United States Department of Labor, *et al.*, <br><br> *Defendants*. | Civil Action No. 16-1035 (RDM) |

## **MEMORANDUM OPINION AND ORDER**

This case is before the Court on plaintiff the National Association for Fixed Annuities' ("NAFA's") renewed motion for a preliminary injunction staying the applicability date of three new Department of Labor rules regulating conflicts of interest in the market for retirement investment advice and motion for a status conference or expedited ruling. *See* Dkts. 49, 50. For the reasons explained below, the Court will **GRANT** NAFA's motion for an expedited ruling, but will **DENY** NAFA's motion for an injunction.

### I.  BACKGROUND

The statutory and regulatory background to NAFA's challenge to the three rules is discussed in depth in the Court's opinion granting summary judgment in favor of the defendant. *See Nat'l Ass'n for Fixed Annuities v. Perez*, 2016 WL 6573480 (D.D.C. Nov. 4, 2016) ("*NAFA I*"); Dkt. 46. The Court will assume a familiarity with that background here, as well as familiarity with the challenges raised in NAFA's complaint.

After extensive briefing and oral argument, the Court issued an opinion on November 4, 2016, denying NAFA's motions for a preliminary injunction and for summary judgment and

granting the Department's motion for summary judgment. Dkt. 46. That same day, the Court entered final judgment in favor of the Department. Dkt. 47. On November 14, 2016, NAFA filed a notice of appeal, a motion for a preliminary injunction to prevent the new rules from taking effect "until at least ten months (or as much as two years) following the final disposition of th[e] litigation," Dkt. 49 at 3, and a motion seeking either an "expedited status conference" or "expedited relief" on NAFA's renewed motion for a preliminary injunction, Dkt. 50. The following day, the Court ordered that the Department respond to NAFA's renewed motion for an injunction by 3:00 p.m. on November 17, 2016, but, on the Department's motion, Dkt. 52, the Court extended the Department's time to respond until November 21, 2016. The Department filed its response as directed on November 21, 2016, arguing that issuance of a stay or injunction pending appeal is unwarranted, Dkt. 53, and NAFA filed a reply the following day. Dkt. 54.

## II. ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). To secure a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Before the Supreme Court's decision in *Winter*, courts in this circuit applied a "sliding-scale" approach to the preliminary injunction analysis under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Since *Winter*, the D.C. Circuit has hinted on several occasions that "a likelihood of success is an independent, free-standing requirement for a preliminary injunction," *id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009)), but it "has not yet needed to decide the issue,"

*League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016). As explained below, this case once again fails to squarely present the question whether the sliding scale approach has survived *Winter*; under either approach, NAFA is not entitled to a preliminary injunction.

If the sliding-scale approach is no longer available, little analysis is necessary. The Court has not only already concluded that NAFA is unlikely to prevail on the merits, but has rejected NAFA's claims in a final judgment. *See NAFA I*, 2016 WL 6573480, at *42. With that prong decided against it, NAFA cannot prevail under an approach that requires that the movant independently satisfy each of the four requirements for issuance of a preliminary injunction.

But, even assuming that the sliding-scale approach remains available, NAFA has failed to carry its burden of demonstrating entitlement to a preliminary injunction. The sliding-scale approach does not dispense with any of the four factors, but rather asks whether, "taken together," all four factors "weigh in favor of the injunction." *Davis*, 571 F.3d at 1292. The movant, as a result, need not "show a 51% likelihood of success" on the merits, "if each of the other three factors 'clearly favors' granting the injunction." *Id.* (quoting *Wash. Met. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)). The Court must still, however, consider the movant's likelihood of success on the merits in that overall balance. This means that, if the movant has merely demonstrated that "a serious legal question is presented," it bears the heavy burden of demonstrating that "little if any harm will befall other interested persons or the public" and that the movant, in contrast, will suffer irreparable injury if denied preliminary relief. *Holiday Tours*, 559 F.2d at 844.

Applying this standard, the Court concludes that NAFA's motion fails for three reasons:

*First*, NAFA faces a particularly heavy burden because the Court has already held that NAFA's challenges fail on the merits.  The Court, accordingly, is not engaged in the process of predicting how it is *likely* to decide the case—it has already decided the case.  As in any case, the Court of Appeals may reach a different conclusion.  But NAFA has not presented any argument that causes this Court to question the result it has already reached or to believe that the Court of Appeals is likely to reach a contrary conclusion.  Moreover, NAFA has failed to identify which of the more than a dozen arguments that it raised before this Court it intends to raise on appeal and, more importantly, how the challenges that it intends to raise relate to its contention that its members will suffer irreparable injury in the absence of an injunction pending appeal.  A number of NAFA's arguments before this Court, for example, focused on the written contract provision of the Best Interest Contract exemption ("BIC Exemption"), *see* Dkt. 31 at 61–85; Dkt. 32 at 41–46, 50–75, and, in fact, it now identifies its challenge to that requirement as one of the "[s]erious [l]egal [q]uestions" for appeal, Dkt. 49 at 10.  Yet, in its reply brief, NAFA concedes, as it must, that this requirement does not go into effect until January 1, 2018, and it offers no support for the contention that immediate relief is necessary.  More generally, in the proceedings before this Court, NAFA challenged an array of different rules and requirements, each of which involves different legal issues and many of which will likely have different consequences for NAFA's members while its appeal is pending.  Its current motion, however, fails to explain why it contends that any *specific* issues that it intends to raise on appeal are likely to succeed—or even raise difficult questions—and, more importantly, how those *specific* challenges relate to the claims of irreparable injury that it asserts.[1]

---

[1] To take another example, it is unclear how NAFA's contention that fixed indexed annuities should be governed by PTE 84-24, instead of the BIC Exemption, is affected by the relevant

*Second*, this not a case in which other interested parties or the public will suffer "little if any harm" if the new rules are enjoined pending appeal. The fundamental premise of the challenged rules is that those who provide investment advice to ERISA plans and IRAs on a commission basis have a conflict of interest and that, absent further protections, the plan and IRA owners who they advise will suffer economic losses. It was for this reason that the Department rejected requests—similar to the request that NAFA now makes—that the transition period extend over a period of two to three years. *See Final BIC Exemption*, 81 Fed. Reg. 21,002-01, 21,070 (Apr. 8, 2016). Although the Department did agree that certain requirements would not take effect until January 1, 2018, it required that "certain core protections"—most notably, the requirement that financial institutions and advisors abide by the duties of prudence and loyalty—go into effect on April 20, 2017, in order to address "concerns about ongoing economic harm to [r]etirement [i]nvestors." *Id.*

NAFA disputes that consumers are likely to be harmed by "conflicts of interest" in the sale of fixed indexed annuities, "given the extensive state regulation that has always been in place," Dkt. 54 at 3, and, indeed, it goes a step further and argues that "low and middle-income individuals" will likely be *harmed* by the new rules because their "needs will go underserved or unserved" due to the new rules, Dkt. 49 at 6. Those contentions are unconvincing. State insurance regulators focus on the "suitability" of the products sold by insurance companies; that focus, however, does not ensure that commission-based compensation does not adversely affect the recommendations the retirement investors receive about which of the many "suitable" investment products they should purchase. Moreover, as explained in the Court's earlier

---

transition rules, given that the most fundamental difference between the two exemptions is the written contract requirement.

opinion, the Department concluded that fixed indexed annuities "are complex products requiring careful consideration of their terms and risks" and that this complexity and risk renders retirement investors particularly reliant on the investment advice they receive and particularly vulnerable to the dangers of conflicted advice.  *See NAFA I*, 2016 WL 6573480 at *34–35 (citing *Final BIC Exemption*, 81 Fed. Reg. at 21,018).  In light of these reasonable conclusions, to which the Court must defer, *see, e.g.*, *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 697 (D.C. Cir. 2016), and the absence of any significant evidence to the contrary, the Court cannot accept NAFA's contention that "no real harm will result from delaying the applicability of the Rule," Dkt. 49 at 22.

*Third*, NAFA's showing of irreparable injury is insufficient to overcome its failure to demonstrate a likelihood of success on the merits or that others will suffer little or no injury from issuance of an injunction.  The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  The injury must be unrecoverable; it must be "both certain and great; [and] it must be actual and not theoretical."  *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam); *see also Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52-53 (D.D.C. 2011); *see also United States Ass'n of Reptile Keepers, Inc. v. Jewell*, 103 F. Supp. 3d 133, 163 (D.D.C. 2015) (injury must be "imminent, serious and unrecoverable").  In a case in which the district court has already concluded that the plaintiff's claims lack merit and in which others will be harmed by the issuance of an injunction, only the most extraordinary showing of irreparable injury will suffice.

Much of NAFA's claim of irreparable injury turns on the contentions that the new rules will require a fundamental restructuring of the fixed indexed annuities industry and that many of the new requirements are unworkable.  *See* Dkt. 49 at 13, 17.  The Court does not doubt that the

new rules will result in significant changes in how the industry operates. It is unclear, however, whether NAFA's more dramatic predictions will occur. NAFA argues, for example, that many financial institutions will conclude that they can no longer sell fixed indexed annuities through independent insurance agents because those agents are not sufficiently subject to their control. *Id.* at 14–15. The Court, however, has already rejected NAFA's contention that an insurance company must supervise sales made by independent agents of the products of other companies; rather, each company must only ensure compliance with the new rules for sales of their own products. *See NAFA I*, 2016 WL 6573480, at *37. It argues that "thousands of independent agents will leave the business," Dkt. 49 at 13, but that contention is both speculative and in tension with at least some of NAFA's own evidence, *compare* Dkt. 5-8 at 4 (First Foguth Decl. ¶ 13) (small insurance-only company likely to go out of business) *with* Dkt. 49-3 at 3 (Second Foguth Decl. ¶ 9) (declarant "will obtain a . . . securities license . . . to ensure compliance with the rule"). It argues that many Insurance Marketing Organizations ("IMOs") "will go out of business" and that "there will be massive layoffs at other IMOs that are able to remain open." Dkt. 49 at 15 (quoting Dkt. 49-1 at 9 (Second Marrion Decl. ¶ 27)). But the new rules, in fact, permit IMOs to petition for exemptions permitting them to serve as financial institutions for purposes of the BIC Exemption, *see Final BIC Exemption*, 81 Fed. Reg. at 21,067, and the Department concedes that IMOs may, alternatively, contract with insurance companies to provide the required supervision, Dkt. 53 at 6. Although NAFA argues that the Department has yet to approve any of the pending IMO petitions, *see* Dkt. 49 at 14, it offers no basis to conclude that it will fail to do so before April 2017.

      This is not to suggest that NAFA members will be unaffected by the approaching applicability dates in April 2017 and January 2018, or even that some or all of NAFA's

predictions will not come to pass. For present purposes, however, NAFA bears the burden of demonstrating that the irreparable injury that it posits is both certain and imminent. *See Wisc. Gas Co.*, 758 F.2d at 674; *Reptile Keepers*, 103 F. Supp. 3d at 163. Applying that demanding standard, the Court can conclude that the fixed indexed annuity industry will certainly incur substantial compliance costs; that business practices will change when the new rules take effect; and that those involved at various levels of the fixed indexed annuities industry will sustain economic losses from, for example, receiving lower commissions or facing altered competition in the marketplace. Those types of costs, however, even if irreparable, are not sufficient to overcome the substantial weight that the Court must accord to the fact that it has already concluded that NAFA's claims fail on the merits and the Department's reasonable conclusion that retirement investors will likely be harmed if the rules do not take effect over the next several months. Indeed, a contrary conclusion would mean that, in most challenges to significant regulatory actions, the challenging party would be entitled to an injunction pending appeal, even if the district court had already concluded that the challenge is without merit and others would be harmed by the requested relief. That is not the law.

Finally, invoking this Court's decision in *Shapiro v. U.S. Dep't of Justice*, No. 13-555-RDM, 2016 WL 3023980 (D.D.C. May 25, 2016), NAFA argues that it is entitled to an injunction because "its members will effectively be deprived of appellate review if an injunction is not granted." Dkt. 54 at 1–2. *Shapiro*, however, presented a different question from the question presented here. In that case, the Court ordered that the FBI produce certain records pursuant to FOIA. The Court agreed to stay that order, however, because the FBI maintained that the records were exempt from disclosure under FOIA, and thus disclosure of the records would moot any appeal of this Court's decision. 2016 WL 3023980, at * 7. That decision was

consistent with the "routine[]" practice in FOIA cases of issuing stays "where the release of documents would moot a defendant's right to appeal." *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007).  Here, in contrast, NAFA does not seek to stay an order of this Court and, more importantly, it does contend (and cannot contend) that an injunction is necessary to preserve the jurisdiction of the Court of Appeals.  Rather, its assertion that it will "*effectively* be deprived of appellate review" can only be understood to mean that its members will sustain certain losses or injuries if the Court does not grant preliminary relief.  That contention, however, is no different than the contention that NAFA's members will suffer the types of irreparable injury discussed above.

\*   \*   \*

Weighing all four preliminary injunction factors together, the Court concludes that NAFA is not entitled to an injunction pending appeal or while its members transition to the new rules.  The likelihood of success on the merits prong weighs heavily against NAFA.  Moreover, the new rules were adopted to protect retirement investors from conflicted advice and potential losses to their retirement savings.  Enjoining the rule would delay this protection.  It would also interfere with the implementation of three regulations that were lawfully adopted after nearly six years of study, public comment, and consideration.  *See, e.g.*, *In re Medicare Reimbursement Litig.*, 309 F. Supp. 2d 89, 99 (D.D.C. 2004) (agency "compliance with applicable law constitutes a separate, compelling public interest.").  And, even though members of NAFA will incur significant, unrecoverable costs if the rules take effect, NAFA has failed to carry its heavy burden of showing that its members are "certain" to sustain injuries that are so extraordinary that preliminary relief is warranted even though this Court has rejected NAFA's claims on the merits

and others will likely sustain losses if the rules are enjoined. The Court, accordingly, concludes that the overall balance of equities tips decidedly against granting preliminary relief.

## CONCLUSION

Plaintiff's motion for an expedited decision, Dkt. 50, is hereby **GRANTED**, and its motion for an injunction staying the April 10, 2017 partial applicability date is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 23, 2016